UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INC., <br><br> Plaintiff, <br><br> v. <br><br> CARDINAL CAMERA & VIDEO CENTER, INC., <br><br> Defendant. | Case No.  15-cv-02991-JST <br><br> **ORDER GRANTING MOTION TO DISMISS AND TRANSFERRING CASE** <br><br> Re: ECF No. 17 |

Before the Court is Defendant Cardinal Camera & Video Center, Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue, or, alternatively, to transfer venue.  For the reasons set forth below, the Court finds that jurisdiction in this district is lacking and will transfer the case to the Eastern District of Pennsylvania.

I.  **BACKGROUND**

On June 26, 2015, Plaintiff Adobe Systems Inc. ("Adobe") filed this action against Cardinal Camera & Video Center, Inc. ("Cardinal"), raising claims of federal trademark infringement, false designation of origin under section 43(a) of the Lanham Act, federal trademark dilution, federal copyright infringement, unlawful or unfair business practices under California Business & Professions Code section 17200, and unfair competition under California common law.  ECF No. 1.  Adobe alleges that Cardinal uses both its own website (www.cardinalcamera.com) and its Amazon.com merchant account to sell unauthorized versions of Adobe's software, thereby infringing Adobe's underlying trademarks and copyrights.  Id. ¶¶ 26–28.  Specifically, Adobe alleges that Cardinal has sold unbundled copies of Original Equipment Manufacturer ("OEM") versions of Adobe's software in violation of Adobe's Software License Agreement ("SLA"), which forbids the sale of such software unbundled from approved hardware components.  Id. ¶ 22–23, 28.

Adobe is a corporation organized under the laws of the state of Delaware and has its principal place of business in San Jose, California. Id. ¶ 1. Cardinal is a corporation organized under the laws of the state of Pennsylvania and has its principal place of business in Lansdale, Pennsylvania. Id. ¶ 2. Cardinal operates primarily from its six East Coast stores located in Pennsylvania, New Hampshire, Virginia, and North Carolina, with 88% of its sales coming from these retail locations. ECF No. 17 at 5–6. The remaining 12% of Cardinal's sales come from Cardinal's website (2% of total sales) and from Cardinal's Amazon.com account (10% of total sales). Id. at 6. All of Cardinal's sales which have been shipped to the state of California come from Cardinal's Amazon.com account. Id. Of Cardinal's Amazon.com sales, 12% were shipped to California. Id. As a result, 1.2% of Cardinal's total sales are sent to California. Id. Adobe alleges that its investigators purchased two unbundled versions of Adobe OEM software from Cardinal's Amazon.com account, but does not allege from where this software was purchased or where it was sent. ECF No. 1 ¶¶ 29–34.

On August 27, 2015, Cardinal filed a motion to dismiss Adobe's complaint for lack of personal jurisdiction or improper venue, or, alternatively, to transfer venue, ECF No. 17, which motion the Court now considers.

## II.     LEGAL STANDARD

Where a defendant objects to the Court's personal jurisdiction over it pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). In the absence of an evidentiary hearing, however, the plaintiff need only make a prima facie showing of personal jurisdiction. Id. Uncontroverted allegations in the plaintiff's complaint must be taken as true, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." Id. (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Schwarzenegger, 374 F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due

2

process requirements, the jurisdictional analyses under state law and federal due process are the same." Id. at 800–01. The relevant question, therefore, is whether nonresident defendant Cardinal has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-linked." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2011). General jurisdiction permits jurisdiction over a defendant even when the claims at issue do not arise from or relate to activity in that forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.15 (1985). A court may assert general personal jurisdiction over defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 131 S.Ct. at 2851 (quoting Int'l Shoe, 326 U.S. at 317). Plaintiff does not argue that the Court has general jurisdiction over Cardinal.

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 131 S.Ct. at 2851 (internal quotation marks omitted). The Ninth Circuit has established a three-part test to determine whether a court has specific personal jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." Id. If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id.

### III. DISCUSSION

#### A. Personal Jurisdiction

##### 1. Purposeful Direction or Purposeful Availment

The first prong of the Ninth Circuit's three-prong specific personal jurisdiction test asks whether a defendant purposefully directed its activities at the forum or purposefully availed itself of the privilege of conducting activities in the forum. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). Although the terms "purposeful availment" and "purposeful direction" are sometimes used interchangeably, they represent two distinct concepts. Id. A purposeful availment analysis is most often used in suits sounding in contract. Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015). A purposeful direction analysis is most often used in cases, like this one, that sound in tort. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (applying purposeful direction analysis to copyright infringement action). Courts determine whether a defendant purposefully directed its actions at the forum by applying the three part "effects test" from Calder v. Jones, 465 U.S. 783 (1984), which requires that "the defendant allegedly must have: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Brayton Purcell, 606 F.3d at 1128 (quoting Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)). Under this test, it is not sufficient that the defendant merely took action with a foreseeable effect in the forum state. Boschetto, 539 F.3d at 1021.

###### a. Intentional Act

Adobe must first demonstrate that Cardinal committed an "intentional act." This term has a special meaning under Calder's effects test. In this context, an "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." Brayton Purcell, 606 F.3d at 1128. In its Complaint, Adobe alleges that Cardinal has distributed unauthorized versions of Adobe's software throughout the United States. ECF No. 1 ¶ 26–28. These alleged sales constitute "intentional acts" under Calder's effects test. Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 674 (9th Cir. 2012).

4

### b. Express Aiming

The second prong of the effects test requires the plaintiff to show that the defendant expressly aimed its actions at the forum state. Adobe argues that personal jurisdiction exists under this prong, relying heavily on Washington Shoe for the proposition that an intentional act, such as willful copyright infringement, which harms a defendant known to be in the forum is alone sufficient to show express aiming. 704 F.3d at 678 ("Because the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a *willful* infringement is necessarily directed there as well.") (emphasis in original); see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) (stating that the express aiming "requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state").

The viability of this theory is doubtful, however, after the Supreme Court's decision in Walden v. Fiore, 134 S.Ct. 1115 (2014). In Walden, Drug Enforcement Administration ("DEA") agents searched two professional gamblers (Gina Fiore and Keith Gipson) at an airport in San Juan, Puerto Rico. Id. at 1119. The agents found $97,000 in cash. Id. Fiore and Gipson explained that the money was their winnings from gambling in Puerto Rico. Id. After Fiore and Gipson boarded their flight for Atlanta, a law enforcement official in Puerto Rico notified Atlanta airport DEA agents about Fiore and Gipson and their plan to catch a connecting flight from Atlanta to Nevada. Id. When Fiore and Gipson arrived in Atlanta, they were stopped and searched by DEA agents who seized the cash. Id. Fiore and Gipson continued on to Nevada. Id. The agent who seized the cash helped to draft an affidavit showing probable cause for the seizure, but no forfeiture complaint was ever filed, and the cash was eventually returned to Fiore and Gipson. Id.

Fiore and Gipson subsequently filed suit in the U.S. District Court for the District of Nevada against the Atlanta DEA agent, alleging that the agent violated their Fourth Amendment rights by seizing the cash without probable cause and later drafting a false affidavit justifying the seizure. Id. at 1120. The district court granted the agent's motion to dismiss the case for lack of

5

personal jurisdiction, and the Ninth Circuit reversed.  Id.  The Supreme reversed the Ninth Circuit, finding that specific personal jurisdiction requires that the relationship between the defendant, the forum, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum State" and that "the plaintiff cannot be the only link between the defendant and the forum." Id. at 1122 (quoting Burger King, 471 U.S. at 475) (emphasis in original).  Because the agent's challenged conduct did not have anything to do with Nevada itself, but instead was connected to Nevada only because the plaintiffs happened to reside there, the Supreme Court held that the Nevada district court did not have personal jurisdiction over the agent.  Id. at 1125–26.

As Judge Donato recently noted in Erickson v. Neb. Mach. Co., No. 15-cv-01147-JD, 2015 WL4089849, at *3 (N.D. Cal. July 6, 2015), District courts in the Ninth Circuit are divided on whether, and to what extent, Walden overruled Washington Shoe and prior Ninth Circuit law regarding the express aiming prong.  Compare Erickson,[1] 2015 WL 4089849, at *3 (concluding that Walden "rejected the idea, inherent in Washington Shoe, that a defendant's knowledge of a plaintiff's forum connections and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts analysis") and Under a Foot Plant, Co. v. Exterior Design, Inc.,[2] No. 6:14-cv-01371-AA, 2015 WL 1401697, at *4 n.1 (D. Or. Mar. 24, 2015) (suggesting that Walden was irreconcilable with Washington Shoe and applying Walden) with Exobox Techs. Corp. v. Tsambis,[3] No. 2:14-cv-00501, 2015 WL 82886, at *5–6 (D. Nev. Jan. 6, 2015) (holding that prior Ninth Circuit precedent regarding the express aiming prong is still good law because Walden was

---

[1] In Erickson, the Northern District of California district court found that the express aiming prong was not satisfied where the alleged copyright infringement "did not involve entering California, contacting anyone in California, or otherwise reaching out to California" and any injury was "not localized in California, apart from the fact that plaintiffs are based there."  2015 WL 4089849, at *4.

[2] In Under a Foot Plant, the District of Oregon district court found that the express aiming prong was not satisfied where the alleged copyright infringer knew that the plaintiff copyright owner was located in Oregon, but where none of the defendant's activities occurred in Oregon.  2015 WL 1401697, at *4.

[3] In Exobox, the District of Nevada district court found that the express aiming prong was satisfied where the out-of-state defendant had previously filed suit against the plaintiff "in Texas with the intent to interfere with [the] business transactions" of the plaintiff, a Nevada company.  2015 WL 82886, at*5.  The Exobox court distinguished Walden by noting that the defendant in that case "directed his activities at an entity that incidentally happened to be going to Nevada," whereas the plaintiff in Exobox "chose to direct his activities to an entity known to be in Nevada."  Id.

narrowly decided and is factually distinguishable) and <u>Leibman v. Prupes</u>,[4] No. 2:14-cv-09003, 2015 WL 898454, at *9 (C.D. Cal. Mar. 2, 2015) (holding that, despite <u>Walden</u>, the express aiming requirement is still satisfied when a defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state). The Ninth Circuit itself has not decided whether, and to what extent, <u>Walden</u> overruled prior Ninth Circuit precedent. The Ninth Circuit has, however, applied <u>Walden</u> to hold that the express aiming prong is not met where a California resident brought suit in California against an out-of-state defendant for tortious interference with contract, but where none of defendant's challenged conduct had anything to do with California itself. <u>Picot</u>, supra, 780 F.3d at 1214–15. In so holding, the <u>Picot</u> court rejected plaintiff's argument, which relied on <u>Washington Shoe</u>, that the express aiming prong was met because the defendant targeted a California resident. <u>Id.</u> at 1214. The <u>Picot</u> court found that such an argument was unpersuasive in light of <u>Walden</u>, which "reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." <u>Id.</u>

This Court agrees with the <u>Erickson</u> court that the holding in <u>Washington Shoe</u> cannot be reconciled with <u>Walden</u> and that <u>Walden</u> effectively overrules <u>Washington Shoe</u>. See <u>Miller v. Gammie</u>, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.); <u>Erickson</u>, 2015 WL 4089849, at *3. To rule otherwise would essentially be to hold that "a copyright holder can always sue wherever it happens to be located." 5 <u>Patry on Copyright</u> § 17:166.50 (online ed. 2015). Accordingly, the Court rejects Adobe's argument that Cardinal expressly aimed its conduct at California because Cardinal was "aware of Adobe's domicile in the Northern District of California and . . ., through its infringing conduct,

---

[4] In <u>Leibman</u>, the Central District of California district court found that the express aiming prong was satisfied where the out-of-state defendant was "alleged to have sent tortious emails directly to plaintiff in an attempt to extort money from a known California resident." 2015 WL 898454, at *9.

targeted Adobe therein." ECF No. 19 at 9.

Beyond its reliance on Adobe's presence in California and Cardinal's alleged knowledge thereof, Adobe argues that the express aiming prong is satisfied here because 1.2% of Cardinal's sales are shipped to California and because Cardinal advertises for sale and sells infringing software on its website and through its Amazon.com account. ECF No. 19 at 1, 3, 10. "[O]perating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient" to satisfy the "express aiming" prong. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1229 (9th Cir. 2011) (quoting Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002)). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit has] considered several factors, including the interactivity of the defendant's website, . . . the geographic scope of the defendant's commercial ambitions, . . . and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." Id.

Adobe's Complaint, however, alleges little information about Cardinal's website beyond its bald assertion that the website is "interactive" and its allegation that the website features infringing Adobe products for sale. ECF No. 1 ¶ 26; see Erickson, 2015 WL 4089849, at *4 (finding that conclusory allegations of a website's interactivity are not sufficient to satisfy the express aiming prong). Although Adobe argues that "it is highly likely that Cardinal has sold products infringing on Adobe's rights directly to California residents" through its website, ECF No. 19 at 10, this claim is unsupported by the allegations in Adobe's Complaint. Indeed, Adobe does not even allege where the two Adobe products purchased by its investigators were shipped, ECF No. 1 ¶ 29–34, and Adobe has not pleaded any facts that would suggest that any of the 1.2% of Cardinal's sales shipped to California were, in fact, Adobe products, much less infringing Adobe products. Moreover, Adobe admits that Cardinal's website has a "broad and indiscriminate scope," ECF No. 19 at 10, supporting a finding that Adobe's website is not targeted at California. Mavrix Photo, 647 F.3d at 1231 ("Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed."). Finally, as in Erickson, Adobe does not allege that Cardinal's website "contained content tailored for California

8

residents." 2015 WL 4089849, at * 4. Accordingly, the Court concludes that Adobe has not sufficiently alleged that Cardinal's website directly targets California.

The 1.2% of Cardinal's sales shipped to California are likewise unhelpful to Adobe because they too show no purposeful direction. "[R]andom, fortuitous, or attenuated" contacts with individuals in the forum are insufficient to support personal jurisdiction. Walden, 134 S.Ct. at 1123 (citing Burger King, 471 U.S. at 475); Picot, 780 F.3d at 1212. The Ninth Circuit has held that a sale into the forum is not a substantial contact where it "involved the forum state only because that is where the purchaser happened to reside." Boschetto, 539 F.3d at 1019. District courts have extended this principle to cases involving multiple sales entering the forum simply because the purchasers happened to live in the forum. See Imageline, Inc. v. Hendricks, No. CV 09-1870 DSF (AGRx), 2009 WL 10286181, at *3, 5 (C.D. Cal. Aug. 12, 2009) (holding that "Defendant has not purposefully directed sales into California in a sufficient manner to allow it to be sued over those sales in California," despite the fact that 10% of Defendants' sales, comprising 1,071 transactions over an approximately eight-year period, were made to California residents); Control Solutions, Inc. v. MircoDAQ.com, Inc., No. 3:15-cv-748-PK, 2015 WL 5092593, at ***7** (D. Or. Aug. 26, 2015) (finding no personal jurisdiction over defendant with 1.6% of total sales directed at the forum). Adobe has not alleged or provided evidence of purposeful direction beyond the 1.2% of sales that happen to go to purchasers in California through Cardinal's Amazon.com account. Adobe does not allege that Cardinal advertises in California, markets products specifically intended for a California audience, or in any other way directs its sales activities to California. The Court finds that these sales do not establish express aiming at the forum.[5] Because Adobe has failed to establish that Cardinal expressly aimed its conduct at

---

[5] Even if Adobe were able to show express aiming, it has not shown that its claim "arises out of" Cardinal's forum-related activities. Schwarzenegger, 374 F.3d at 802. The Ninth Circuit "measure[s] this requirement in terms of 'but for' causation." Bancroft & Masters, Inc. v. August Nat. Inc., 223 F.3d 1082, 1088 (9th Cir. 2000). As discussed above, Adobe has not alleged that Cardinal has sold Adobe products, much less infringing Adobe products, to California residents. Adobe claims that Cardinal sent its investigators infringing Adobe software, but does not say where the investigators received the software. ECF No. 1 ¶¶ 29–34. Although Cardinal admits to sending 1.2% of its sales to California, there is no reason to believe that any of the products making up the 1.2% of sales are infringing Adobe products. Thus, Adobe has failed to establish that its claims arise out of Cardinal's contacts with the forum. See Erickson, 2015 WL 4089849,

California, the Court grants Cardinal's motion to dismiss for lack of personal jurisdiction.[6]

### B. Jurisdictional Discovery

Adobe requests leave to conduct jurisdictional discovery. ECF No. 19 at 24. The decision whether to grant jurisdictional discovery is typically within the discretion of the district court. Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977). "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." American West Airlines, Inc. v. GPA Group, Ltd., 877 F.2d 793, 801 (9th Cir. 1989). However, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995)). In its request for jurisdictional discovery, Adobe argues that Cardinal's records "may . . . indicate direct sales and shipments of infringing Adobe-branded products directly to California consumers." ECF No. 19 at 24. The Court finds that these "purely speculative allegations of attenuated jurisdictional contacts" are insufficient to warrant jurisdictional discovery and therefore denies Adobe's request. Getz v. Boeing Co., 654 F.3d 852, 860 (9th Cir. 2011).

### C. Venue and Transfer

Because the Court does not have personal jurisdiction over Cardinal, the Court declines to address whether venue in this District is proper. "Once a Court determines that it lacks personal jurisdiction, it may dismiss the case or, in the interest of justice, transfer the case under 28 U.S.C. § 1406(a)." Wickline v. United Micronesia Dev. Ass'n, Inc., No. C 14-00192 SI, 2014 WL 2938713, at *9 (N.D. Cal. June 30, 2014). The Eastern District of Pennsylvania has personal jurisdiction over Cardinal, as Cardinal's principal place of business is within the district, and neither party disputes that the case could have been brought there in the first place. 28 U.S.C. §

---

*4 (applying "but for" test and finding that plaintiff failed to show that its claims arose out of defendant's contact with the forum).
[6] Because the Court has determined that Adobe fails the express aiming prong, the Court need not examine the remaining elements to determine whether specific personal jurisdiction is lacking for alternative reasons. See Schwarzenegger, 374 F.3d at 807 n.1.

1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Accordingly, the Court finds that it would be in the interest of justice to transfer the action to the Eastern District of Pennsylvania.

## CONCLUSION

For the foregoing reasons, the court grants Cardinal's motion to dismiss for lack of personal jurisdiction. The clerk is directed to transfer this case to the United States District Court for the Eastern District of Pennsylvania.

IT IS SO ORDERED.

Dated: October 7, 2015

_____
JON S. TIGAR
United States District Judge

11